**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD FABER and** | ) | |
| **JENNIFER MONROE, Individually,** | ) | |
| **and also on behalf of similarly situated** | ) | |
| **persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO: 2:16-cv-02337** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CIOX Health, LLC, d/b/a Healthport** | ) | |
| **Technologies, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

---

Defendant CIOX Health, LLC d/b/a Healthport Technologies, LLC ("CIOX") has moved the Court to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This memorandum is submitted in support of CIOX's motion.

## I.      INTRODUCTION

Plaintiffs Richard Faber and Jennifer Monroe ("Plaintiffs") complain that CIOX charged their attorneys "excessive" and "unlawful" fees in requests for medical records that they submitted to CIOX. When the hyperbole of Plaintiffs' Complaint is set aside, the facts alleged are that the attorneys made four (4) requests for medical records, and CIOX charged the following fees for each request:  a basic processing fee of $18.00, per page charges ranging from $.35 to $.85 per page, and a shipping or electronic delivery charge ranging from $1.64 to $2.00.

27608403 v1

As a threshold matter, the Complaint fails to allege that either of the individual plaintiffs ever paid for the requested records or that they were obligated to pay or reimburse their attorneys who made the requests. As a result, Plaintiffs have not alleged that they sustained any injury-in-fact and lack constitutional standing to assert their claims. Accordingly, this court lacks subject matter jurisdiction over this action and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

The complaint fails for the separate reason that it fails to state a claim upon which relief may be granted.  Not only are CIOX's charges modest and imminently reasonable, they are expressly authorized and presumed to be reasonable by the very statute, the Tennessee Medical Records Act of 1974 ("TMRA"),  upon which Plaintiffs base their claims.

Apparently recognizing that CIOX's charges do not violate the TMRA, Plaintiffs invite the court to create a new cause of action never before recognized -- a common law claim for charging too much for copies of medical records. Plaintiffs attempt to anchor their claims under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Health Information Technology of Economic and Clinical Health ("HITECH").

Plaintiffs' claims fail.  There is no private right of action under HIPAA and HITECH. Using HIPAA and HITECH as the basis for creating new and novel state law remedies would effectively create the very private cause of action that Congress elected not to create.  This Court should decline Plaintiffs' invitation to do so. Moreover,  Plaintiffs' claims fail for the additional reason that even if HIPAA or HITECH provided a private right of action (or this Court were to create one as Plaintiffs request), the allegations of the Complaint fail to allege any violations of HIPAA or HITECH either. For these reasons, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and the claims should be dismissed in their entirety.

## II.  ALLEGATIONS OF THE COMPLAINT

The Complaint alleges that Plaintiffs or an attorney "who was authorized to request the records" made the following requests for medical records to CIOX.

1.      On or about January 16, 2015 or February 28, 2015,[1] Diane Asbridge, a paralegal with the law firm of Ballin, Ballin & Fishman, P.C., requested certain medical records of plaintiff Richard Faber from Regional One Health in Memphis, Tennessee and Healthport responded. (Complaint ¶ 41; Declaration of Jason Martin ("Martin Decl."), ¶ 3, Exh. (1)(a)).[2] The request was made by letter dated January 16, 2015 from  On February 28, 2015, Healthport invoiced Ms. Asbridge the amount of $235.30 for the requested records. (Martin Decl. ¶ 3, Exh. 1(b)). The invoiced amounts consisted of a basic fee of $18.00, an electronic delivery fee of $2.00, and per page charges of 0 cents for the first 5 pages, 85 cents per page for the next 45 pages and 35 cents per page for the next 163 pages, for total per page charges of $215.30. *Id.*

2.      On or about December 8, 2015, CIOX provided additional medical records at the request of Ms. Asbridge at the Ballin firm. (Complaint, ¶ 43, Martin Decl. ¶ 4, Exh. 2(a)). On December 8, 2015, Healthport submitted invoice # 0182201188 in the total amount of $704.65, consisting of a basic fee of $18.00, an electronic delivery fee of $2.00, per page

---

[1] Although the complaint alleges that the request was made on February 28, 2015, the same date as the invoice, CIOX's records reflect that the request was received on January 16, 2015 and that the invoice was dated February 28, 2015.

[2] Attached to the declaration of Jason Martin filed herewith are true and correct copies of each of the requests for copies referenced in the complaint and the CIOX invoices generated as a result of those requests. These documents were not attached to the Complaint, but may be considered by this court in determining the present motion without converting the motion to dismiss into a motion for summary judgment.  It is well-established that a court may properly consider matters that are referenced in the Complaint, integral to the Complaint, or documents upon which plaintiffs relied in bringing suit, without converting a Rule 12 motion into a motion for summary judgment. *See, e.g. Cortec Industries, Inc. v. Sum Holding , L.P.* 949 F.2d 42 (2d Cir. 1991); *J. Meyer Pincus & Assocs, P.C. v. Oppenheimer & Co*, 936 F. 2d 759 2d Cir. 1991); *International Audiotext Network, Inc. v. American Telephone & Telegraph Co*., 62 F.3d 69 (2d Cir. 1993).  The requests and corresponding invoices involved in the present case are referenced in the Complaint and are at the core of Plaintiffs' claims, and may properly be considered by the court.

charges of 0 cents for the first 5 pages, 85 cents per page for the next 45 pages, and 35 cents per page for the next for 1,504 pages, for total per page charges of $684.65. Martin Decl. ¶ 4, Exh. 2(b)).

3.      On January 20, 2016, Andrea M. Harris, a paralegal for the Wolff Ardis, P.C. firm, requested certain medical records of plaintiff Jennifer Monroe's minor child from the Center for Health Information Management. (Complaint, P. 55; Martin Decl. ¶ 5, Exh. 3(a)). On February 11, 2016, CIOX invoiced Ms. Harris the total amount of $40.51, which included the basic fee of $18.00, shipping costs of $2.00, and per page charges at 85 cents per page for the next 20 pages of records, for total per page charges of $17.00.  (Martin Decl. ¶ 5, Exh. 3(b)).

4.      On January 29, 2016, Ms. Harris sent an additional request for medical records of Ms. Monroe's minor child to the Center for Health Information Management. (Complaint, P. 56; Martin Decl. ¶6, Exh. 4(a)).   On March 2, 2016, CIOX invoiced Ms. Harris the total amount of $30.71, consisting of the basic fee of $18.00, shipping costs of $1.64, plus per page charges for 0 cents per page for the first five pages, and 85 cents per page for the next 10 pages for total per page charges of $8.50. (Martin Decl. ¶ 6, Exh. 4(b)).

### III. STANDARD OF REVIEW

CIOX has first moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based on Plaintiffs' lack of standing.   Standing is jurisdictional. if it is lacking, it deprives this court of jurisdiction.   *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Association*, 896 F.2d 674, 678 (2nd Cir. 1990).

The United States Court of Appeals for the Sixth Circuit has set forth the following comprehensive analysis for a trial court to determine whether or not standing is proper:

> Standing is the threshold question in every federal case. The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversy so that the judicial process is not transformed into a vehicle for the vindication of the value interests of concerned bystanders. To satisfy Article 3's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be fairly traceable to the challenged action; and there must be a substantial likelihood that the relief requested would redress or prevent the plaintiff's injury. Hence the irreducible minimum constitutional requirements for standing are proof of injury and fact, causation and redressability. A plaintiff bears the burden of demonstrating standing and must plead its components with specificity.

*Coal Operators & Associates v. Babbitt*, 291 F.3d 912, 915-916 (6th Cir. 2002). "[P]aintiff, as the party invoking federal subject matter jurisdiction, has burden of persuading the Court that all of the requirements necessary to establish standing to bring the lawsuit have been met." *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002).

CIOX has further moved to dismiss under Fed. R. Civ. P. 12(b)(6). Under the rule, an action must be dismissed if the complaint fails to state a claim upon which relief can be granted. Although a complaint is to be liberally construed, the Court need not accept a "bare assertion or legal conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, the complaint must contain (1) "enough facts to state a claim that is plausible" and more than "a formulaic recitation of a cause of action's elements." 550 U.S. at 555-56. At minimum, "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Edison v. State of Tenn. Dep't of Children's Services,* 510 F.3d 631, 634 (6th Cir. 2007). "As the Supreme Court recently reiterated, even under Rule 12(b)(6) review, a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. 'Factual allegations must be enough to raise a right to relief above the speculative level.'" 510 F. 3d. at 637, *quoting Twombly*, 550 U.S. at 556.

5

"Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.*

### IV. ARGUMENT AND LEGAL AUTHORITY

A.  **Plaintiffs Lack Standing To Assert the Claims in the Complaint.**

Plaintiffs' claims must be dismissed at the outset pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have failed to allege facts sufficient to establish that Plaintiffs have constitutional standing to pursue the claims asserted.  "Article III restricts federal courts to the resolution of cases and controversies… That restriction requires that the party invoking federal jurisdiction have standing -- the personal interest that must exist at the commencement of the litigation." *Davis v. Federal Election Commission*, 554 U.S. 724, 732-33 (2008).

> [T]he irreducible constitution minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized… and (b) actual or imminent, not conjectural or hypothetical… Second, there must be a causal connection between the injury and the conduct complaint of--the injury has to be fairly… trace[able] to the challenged action of the defendant, and not---th[e] result [of] the independent action of some third party not before the court…   Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  These standing requirements "are not mere pleadings requirements but rather [are] an indispensable part of the Plaintiff's case." *Lujan*, 504 U.S. at 561.

Because standing is jurisdictional, the Court must first consider this ground for dismissal because if it is lacking, this Court lacks jurisdiction over the action. *See, e.g., Rhulen Agency, Inc. v. Alabama Ins. Guaranty Association*, 896 F.2d 674, 678 (2nd Cir. 1990).

Plaintiffs here lack standing because they have failed to plead that they sustained any "injury in fact" as a result of the conduct of CIOX. Although Plaintiffs have plead that their attorneys were invoiced improper charges for medical records and that CIOX did not respond promptly to their requests, they have not plead that Plaintiffs were obligated to pay the charges or that either they or their attorneys have actually paid them. Nor have they even attempted to plead that they sustained any injury as a result of CIOX's alleged delay in producing the records. As a result, they have not plead that they sustained an injury in fact sufficient to supply Constitutional standing and to confer jurisdiction on this court.

At least two courts in the Second Circuit have recently considered the standing requirements in cases very factually similar to those presented here and have found standing to be lacking. *Spiro v. HealthPort Technologies, LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014); *McCracken v. Verisma Systems, Inc., et al.*, Number 14-CV-64 AT, 2015 U.S. Dist. Lexis 64533 (W.D.N.Y. May 18, 2015).

The Plaintiffs in *Spiro*, as here, were clients of a law firm prosecuting personal injury cases on Plaintiffs' behalf. As here, Plaintiffs' attorneys sent requests for Plaintiffs' medical records to hospitals and billing agents and thereafter brought suit alleging that the charges were inflated and unreasonable. Defendants challenged the Complaint on standing grounds, arguing that Plaintiffs had failed to plead that they had sustained an injury-in-fact because the charges were imposed on the law firm, not the individual plaintiffs. In response, Plaintiffs pointed to allegations in the Complaint that each Plaintiff had later reimbursed the law firm for the cost of the copies, after the lawsuit in question had settled.

Nevertheless, the Court in *Spiro* rejected Plaintiffs' arguments and held that the Complaint was insufficient because it did not plead that any Plaintiff was obligated to reimburse the law firm for the copying costs that the Plaintiff incurred. Instead the after-the-

fact payment "was a volitional act - an act of grace." *Spiro*, 73 F. Supp. 3d 259, *268.  The court also pointed to the absence in the Complaint of any allegation that the Plaintiffs were obligated to reimburse their lawyers for medical records charges.  As a result,  any legal right to challenge the charges belonged exclusively to the attorneys, not the Plaintiffs. 73 F. Supp. 3d 259, *269.

*McCracken* involved very similar facts, except that the Amended Complaint at issue there failed to contain even an allegation that Plaintiffs actually reimbursed their attorneys for the cost of the records, much less that they had a legal obligation to do so at the time the copies were ordered. 2015 U.S. Dist. LEXIS 64533, * 10. In response to Defendants' challenge to standing, the *Verisma* Plaintiffs argued that such allegations were unnecessary and pointed to allegations that they paid for their medical records "through counsel. . . ." The Court disagreed, stating as follows:

> Plaintiffs state that these allegations [that Plaintiffs had a legal obligation to reimburse their attorneys and did so] are unnecessary and urge that their allegation that they paid for their medical records "through . . . counsel" are sufficient. The Court disagrees.

*Id.* Citing *Spiro*, the Court in *McCracken* declined to "treat this conclusory and elliptical statement as equivalent to a concrete factual allegation that the legal duty to pay these bills, or to reimburse [the law firm] for doing so, fell upon Plaintiffs as of the time that [law firm] incurred the charge," *Id.* 2015 U.S. Dist. LEXIS 64533, *10-11. Because the Court found that the Amended Complaint did not contain sufficient facts establishing that Plaintiffs sustained an injury-in-fact, the Court dismissed the Complaint for lack of standing.

CIOS acknowledges the recent decision of the Second Circuit Court of Appeals in *Carter v. Healthport Technologies*, No. 15-1072, 2016 U.S. App. LEXIS 8565 (2d. Cir. N.Y. May 10, 2016). There, the Second Circuit held that allegations that the plaintiffs paid for their

medical records "through counsel" coupled with allegations that the plaintiffs bore the "ultimate expense " for payment of the records were sufficient to allege an "injury in fact" and avoid dismissal for lack of standing.

The allegations of the Complaint here, however, are far more lacking than the allegations in the complaint in *Carter* or the dismissed complaints in *Spiro* and *McCracken*. In *Spiro*, the Complaint at least alleged that the Plaintiffs later reimbursed their lawyers for the cost of the copies after the lawsuit was settled. 73 F. Supp. 3d 259, * 268. The Complaint in *McCracken* alleged that plaintiffs paid for their medical records "through counsel." 2015 U.S. Dist. LEXIS 64533, * 10.  As noted above the complaint in *Carter* alleged that Plaintiffs were ultimately responsible for payment of the copies.  The Complaint here does not even contain these allegations.  Rather, it simply alleges as follows: (1) that each Plaintiff "or [Plaintiff's] attorney who was authorized by [Plaintiff] to request [Plaintiff's medical records]" requested such records. (Complaint, ¶¶ 38 and 53); and (2) that each Plaintiff was charged certain fees for the delivery of the records. (Complaint,¶¶ 42, 44, 60 and 62).  Nowhere does the Complaint allege that the named Plaintiffs or their attorneys paid for the medical records. To the extent that Plaintiffs ask the Court infer that Plaintiffs' attorneys paid for the records, the Complaint remains deficient because nowhere does it allege that Plaintiffs were obligated to reimburse their attorneys at the time the copies were requested.

As a result, Plaintiffs have not alleged that they sustained any "injury-in-fact" sufficient to establish constitutional standing under the rules discussed above. For this reason, Plaintiffs' Complaint must be dismissed in its entirety for lack of subject matter jurisdiction.

9

B.     **The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Under the Tennessee Medical Records Act.**

Even if this Court had subject matter jurisdiction over this action, the Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In Count I of their Complaint, Plaintiffs first assert claims under the Tennessee Medical Records Act of 1974, Tenn. Code Ann. § 68-11-301, *et seq*. ("TMRA").  The TMRA, enacted in 1974, generally imposes a duty on hospitals to maintain accurate records and to make them available to patients and their representatives upon request. Tenn. Code Ann. §§ 68-11-303-304. The statute provides that the party requesting the records is responsible for the reasonable costs of copying and mailing the records. Tenn. Code Ann. § 68-11-304(a)(2)(A)(i). The statute further addresses such issues as preservation of medical records, storage of medical records, and communications between healthcare providers and their patients. Tenn. Code Ann. § § 68-11-305, 307 and 312.

 Tenn. Code Ann. § 68-11-311(b) also creates a civil cause of action. The cause of action, however, is limited, and forecloses other causes of action based upon alleged TMRA violations. The statute provides as follows:

> No hospital, its officers, employees, or medical and nursing personnel practicing in the hospital shall be civilly liable for violation of this part, except to the extent of liability for actual damages in a civil action for willful or reckless or wanton acts or omissions constituting such violation. Such liability shall be subject, however, to any immunities or limitations of liability or damages provided by law.

Stated differently, the statute provides that there can be no cause of action based on violations of the TMRA other than a cause of action for the award of actual damages for willful, reckless or wanton acts constituting the violation. Although the statute by its terms

only applies to "hospitals, its officers, employees, or medical and nursing personnel," CIOX acknowledges that at least one Tennessee court has held that the statute applies to an independent copying service that provides copies of medical records. *See Pratt v. SmartCorp,* 968 S.W.2d, 868 (Tenn. Ct. App. 1997), appeal denied, 1998 Tenn. LEXIS 299 (Tenn. May 26, 1998).

In the Complaint, Plaintiffs allege that CIOX violated the TMRA because its charges for medical records "exceed the reasonable costs for copying and the actual cost of mailing and/or providing the records." (Complaint, ¶ 95). Plaintiffs claim that CIOX's charges "were intentional, fraudulent, malicious or reckless" and seek actual damages, plus exemplary and punitive damages. (Complaint, ¶ 97).  The complaint also alleges that CIOX violated the directive in contained in T.C.A. 68-11-304(a)(1) that the records be provided "without unreasonable delay."  (Complaint, ¶ 93).

Plaintiffs correctly allege that the TMRA directs that hospitals may charge a reasonable fee for copies and actual costs for shipping. (Complaint, ¶ 28). Curiously absent from the Complaint, however, is any identification of or reference to the TMRA provisions that directly address the specific amounts that a hospital may charge for copies of medical records. The statute provides as follows:

> The charges to a patient or a lawyer authorized by the patient to review the patient's records shall not exceed the reasonable costs for copying and the actual cost of mailing the records. … ***The following charges shall be presumed to be reasonable:*** (1) a fee of Eighteen Dollars ($18.00) which shall include the first five pages of the medical record and a per page charge of Eighty-Five Cents ($.85) for the sixth page, up to and including the 50th page; (2) a fee of Sixty Cents ($.60) per page for the 51st page up to the 250th page and Thirty-Five Cents ($.35) per page for all pages thereafter; (3) a fee for certifying medical records, not to exceed Twenty Dollars ($20.00) for each record certified.

Tenn. Code Ann. 68-11-304(a)(2)(A)(1) (emphasis supplied). These provisions provide guidance to hospitals as to what fees are reasonable, effectively creating a safe harbor within which hospitals and providers can operate without fear of running afoul of a vague and otherwise undefined "reasonable" standard.   Notably, although the statute creates a presumption that charges *below* the stated amounts identified are reasonable, it creates no presumption that charges above the stated amounts are unreasonable, thus allowing providers the opportunity to establish that higher charges are reasonable given their particular markets or circumstances.

Not only do Plaintiffs fail to disclose and identify the existence of this safe harbor, they also fail to inform the court that CIOX's charges are within the safe harbor--that is, that the charges at issue here are charges expressly allowed by the statute.  As noted above, each invoice at issue reflects that CIOX charged a basic fee of $18.00, which includes the first five pages of the medical records, a per page fee of $.85 for pages 6-50, and a per page fee of $.35 for all pages thereafter.  These charges are expressly authorized and "presumed reasonable" by the plain language of the TMRA. The *only* additional charges on the invoices are electronic fees of $2.00 per request or, in the case of records not produced electronically, *actual* costs of shipping.  In short, CIOX's medical records charges reflected on the invoices are reasonable under the TMRA, as a matter of law.

Because the statute is plainly intended to instruct hospitals and providers as to what charges are reasonable under the statute, the presumption should be construed to be conclusive. However, even if Plaintiffs were to argue that the presumption is rebuttable, it would not aid their cause.  Because CIOX charged amounts that are presumed to be reasonable under the statute, CIOX simply cannot be held to have engaged in conduct that constituted a "willful", "reckless" or "wanton" violation that would trigger the limited civil action reorganized in

12

Tenn. Code Ann. § 68-11-311(b).    Moreover, although Plaintiffs allege that CIOX failed to provide the records "without unreasonable delay", plaintiff fails to identify any actual damage that they suffered as a result of the any alleged unreasonable delay.  This omission is fatal in light of the limited statutory remedy which allows only for the recovery of actual damages.

As a result, Plaintiffs' Complaint fails to state a claim under the TMRA.

**C.    The TMRA bars the assertion of common law claims based on alleged TMRA Violations.**

As noted above, Tenn. Code Ann. § 68-11-311(b) expressly bars a Plaintiff from using alleged TMRA violations as a basis for any civil liability other than the limited civil action provided under the statute. Its unambiguous terms clearly bar the imposition of liability on anyone subject to the statute from being civilly liable for its violations "except for liability for actual damages for willful, reckless or wanton acts or omissions."  The statute does not permit other civil law causes of action based upon alleged TMRA violations..  To the extent that they are premised   on alleged violations of the TMRA, the following claims are also barred: negligence (Count II), negligence per se (Count III), breach of fiduciary duty (Count IV), breach of implied contract (Count V), breach of covenant of good faith and fair dealing (Count VI), Unjust Enrichment (Count VII), and Injunctive Relief (Count VIII).

**D.    <u>Plaintiffs' Complaint Fails to State a Claim Based Directly or Indirectly on Violations of Federal Statutes and Regulations.</u>**

Apparently realizing that the TMRA provides them no cause of action, either directly or indirectly, and that the statute expressly bars other state law claims based on alleged TMRA violations, Plaintiffs next turn to federal statutes and regulations, including HIPAA and HITECH, in search of a basis for their claims. Plaintiffs allege that CIOX violates HIPAA by

charging to Plaintiffs' lawyers "more than a reasonable, cost based fee for medical records." (Complaint ¶ 35). Although Plaintiffs do not assert direct causes of action under HIPAA or HITECH, they attempt to use alleged violations of HIPAA and HITECH to support separate causes of action under state tort and contract law.

Plaintiffs' efforts to use HIPAA and HITECH as the basis for a new cause of action fail for three separate and independent reasons. First, as noted above, there is no private cause of action under HIPAA. Second, even if the Plaintiffs could allege violations of HIPAA, the violations cannot be used as the basis for the creation of a new cause of action under Tennessee law. Finally, because HIPAA does not apply to medical records requests made by attorneys of patients, the Complaint fails to allege any HIPAA violations that could support a cause of action under other theories. Each of these arguments is addressed below:

     1.    <u>There is no private right of action under HIPAA.</u>

HIPAA is designed "to improve the … efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic information of certain health information." HIPAA § 261, codified at 42 U.S.C. § 1320d. Through HIPAA, Congress intended to "recognize with th[e] importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems." *S.C. Med Association v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003). HIPAA authorizes the Secretary of Health and Human Services to "adopt standards" that will "enable health information to be exchanged electronically, … consistent with the goals of improving the operation of the healthcare system and reducing administrative costs" and that will "ensure the integrity and confidentiality of [individual's health] information [and protect against] … unauthorized uses or disclosures of the information." *See* 42 U.S.C. §1320 d-2.

14

The law is settled that there is no express or implied cause of action under HIPAA.  See e.g. *Acara v. Banks*, 470 F.3d  569 (5th Cir. 2006); *O'Donnell v. Blue Cross Blue Shield of Wyoming,* 173 F.2[nd] 1176 (D. Wyoming 2001); *Means v. Independent Life and Accident Insurance Co*., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997); *Brock v. Provident America Insurance Co*., 144 F. Supp 2nd 652, 657 (N.D. Tex. 2001); *Wright v. Combined Insurance Co. of America*, 959 F.Supp 356, 362-363 (N.D. Miss. 1997).

     2.     <u>HIPAA Violations Cannot Be the Basis for Creating New Causes of Action Under State Law</u>.

Apparently recognizing that there is no express or implied cause of action under HIPAA, Plaintiffs attempt to characterize the HIPAA regulations as a "standard of care" to be applied to demonstrate the breach of a duty already owed to Plaintiffs under Tennessee law. More accurately, however, Plaintiffs are attempting to use alleged HIPAA violations as a basis for the creation of *new* state law claims never before recognized.  This fact is fatal to their claims.

When a federal statute or regulation is used as the basis for a state law cause of action, three separate, but related questions must be asked: first, whether the federal statute preempts state law altogether; second, if there is no preemption, whether the federal statute or regulation can be used to establish a standard of care for a pre-existing state law claim; and three, whether the statute or regulation can be the source of a new claim previously unrecognized under state law.  The distinction among these issues is critical.  Clearly, if federal law preempts state law, then no state law claim can proceed. When a federal statute does not preempt state law, a violation of a federal statute may also constitute a violation of a separate state law, and federal

statutes or regulations have at times been held to supply a "standard of care" to determine whether a pre-existing state law duty has been violated.

However, the violation of the federal statute or regulation can never be used to *create* a new cause of action that otherwise would not exist under state law. Rather, for a federal statues or regulation to supply a standard, a plaintiff must have a separate underlying cause of action under state law *separate and apart from* the federal regulation to which the standard may attach. Courts in Tennessee and elsewhere have so held. In *King v. Danek Med*, 37 S.W. 429 (Tenn. App. 2000), the Court of Appeals addressed whether alleged violations of the Food Drug and Cosmetic Act, 21 USC § 301 et seq. (" FDCA')  and the Medical Device Amendment to that Act, 21 U.S.C. § 360 ("MDA") could support a cause of action for negligence *per se* under Tennessee law.

Significantly, the court recognized the difference in whether federal law pre-empted otherwise viable state causes of action and whether the federal standard could be used to create a state law claim that otherwise did not exist.  Quoting from a decision from the Third Circuit, the Court held as follows:

> Consequently, state law claims such as negligence, breach of implied warranty, and  fraudulent misrepresentation are viable, even to the extent they seek recovery for conduct that may also have violated the FDCA.  But neither Medtronic nor Bone Screw One purports to allow private plaintiffs to sue directly for violations of the federal statute in the absence of a separate underlying cause of action.  They merely hold that such causes of action as previously existed under state law are not pre-empted by the FDCA and medical device amendments.

37 S.W. 3d 429, 456, *quoting In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 791 (3d Cir. 1999). *Accord Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995)(statutes "do not … automatically create duties cognizable under local tort law. The pertinent question is whether the duties set forth in federal law are analogous to those set forth

16

in the local tort law."); *Talley v. Danek Medical*, 179 F.3d 154, 158 (4th Cir. 1999)("The negligence *per se* doctrine does not create new causes of action.  Rather, it recognizes a legislatively created standard of care to be exercised where there is an underlying common-law duty.").

In the present case, absent the HIPAA regulations regarding allowable charges for patient medical records, Plaintiffs would have no cognizable claim under state law.  Aside from any duty created by HIPAA regulations, Tennessee law provides no cause of action to plaintiffs' attorneys who believe that they have been overcharged by a hospital or copying service.  HIPAA regulations cannot supply a "standard of care" to support a non-existent cause of action.

Some courts have addressed whether HIPAA privacy rules can support state law causes of action.  CIOX also acknowledges that some courts have held that held that HIPAA does not preempt *otherwise viable* state law causes of action and might provide a standard of care to support existing state law causes of action.  See, e.g. *Byrne v. Avery Center for Obstetrics and Gynecology*, 314 Conn. 433, 102 A. 3d 32 (Conn. 2013); *R.K. v. St. Mary's Medical Center*, 735 S.E.2d 715 (2012).

These cases, however, addressed federal preemption:  whether HIPAA preempted otherwise viable state law claims.  After holding that HIPAA did not preempt state law, the courts allowed previously recognized common law actions to proceed.  Notably, however, neither case involved an effort like the effort here to use HIPAA as a basis for creating a new cause of action where one did not otherwise exist.  The court in each case was careful to say so.

*Byrne v. Avery Center for Obstetrics and Gynecology*, 314 Conn. 433, 102 A. 3d 32 (Conn. 2013) involved a claim stemming from a hospital's alleged breach of confidentiality of plaintiff's medical records in complying with a subpoena.  The district court held that such

claims were preempted by HIPAA. Reversing, the Connecticut Supreme Court held that HIPAA did not preempt such a common law cause of action. 314 Conn. at 452. Critically, however, the court emphasized that its decision was limited to deciding whether HIPAA preempted otherwise viable state common law claims. The court was careful to say both (a) that the viability of such state law claims was not before the court and (b) that its decision presumed that Connecticut common law would otherwise recognize a remedy for breach of a patient's confidentiality. The court stated:

> We note at the outset that whether Connecticut's common law provides a remedy for a health care provider's breach of its duty of confidentiality, including in the context of responding to a subpoena, is not an issue presented in this appeal. ***Thus, assuming, without deciding, that Connecticut's common law recognizes a negligence cause of action arising from health care providers' breaches of patient privacy in the context of complying with subpoenas, we agree with the plaintiff and conclude that such an action is not preempted by HIPAA…***

314 Conn. at 445 (emphasis supplied). In other words, while HIPAA could not be used as the basis for the creation of a new common law claim not theretofore recognized, it could be used to inform the applicable standard of care, *but only if* the state already recognized a negligence claim for breach of a patient's confidentiality.

Similarly, *R.K. v. St. Mary's Medical Center, Inc*., 229 W. Va 712 (2012) involved the assertion of various state law tort claims stemming from a hospital employee's alleged actions in improperly accessing a patient's medical records. The lower court dismissed the claims, holding that they were preempted by HIPAA. Reversing, the West Virginia Supreme Court held that HIPAA did not preempt such claims. As in *Byrne*, however, the court was careful to identify the distinction between the question of whether HIPAA preempted state law claims for breach of patient confidentiality and whether HIPAA could be used as the basis for a new cause of action. The court made it clear that it was answering both questions in the negative:

18

The court allowed the action to proceed because:  (1)  HIPAA did not preempt state law causes of action; and (2) because West Virginia already recognized a cause of action for breach of confidentiality against a physician for wrongfully disclosing confidential information.  229 W. Va. 712, 720 (Under West Virginia law, "a patient does have a cause of action for the breach of the duty of confidentiality against a treating physician who wrongfully divulges confidential information," quoting *Morris v. Consolidation Coal Co.*, 191 W. Va. 426, 446 (W. Va. 1994).

By contrast, Plaintiffs in the present case have not and cannot point to any Tennessee common law cause of action for "overcharging" for medical records.  As a result, Plaintiffs' effort to use HIPAA as a vehicle for *creating* such a cause of action must fail.

3.    Even if violations of HIPAA regulations were actionable under state law, Plaintiffs have not alleged any violations of HIPAA.

Finally, even assuming (hypothetically) that HIPAA created an express cause of action or that Tennessee should imply such a cause of action, Plaintiffs' Complaint simply alleges no HIPAA violations because each of the requests at issue came from Plaintiffs' attorneys, not from Plaintiffs themselves.

This distinction is critically important under HIPAA because the HIPAA regulations governing allowable charges for a patient's medical records apply only to the patient (the "individual" under HIPAA), not to their lawyers.  That HIPAA Regulations do not apply to anyone other than the patient (and not their attorneys) is clear.   By their terms, the HIPAA regulations apply to "an *individual* that has a right of access to inspect and copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set."  45 CFR §164.524(a)(1).  The term "individual" is a defined term under HIPAA.  It is defined as "the person who is the subject of the protected health information."  45 CFR § 160-103.  By its plain terms, the

regulations do not apply to requests made by plaintiffs' personal injury attorneys or other persons acting on the individual's behalf.  *See Webb v. Smart Document Solutions, LLC*, 499 F.3d  1078 (9th Cir.  2007).

 In holding that the term "individual" in the HIPAA regulations excluded the attorneys for the individual/patient, the Court of Appeals for the Ninth Circuit in *Webb* noted that when HIPAA intended the term "individual" to include an individual person acting on the individual's behalf, it knew how to say so.  The court noted that 45 CFR § 164.502(g) defines when a covered entity must treat someone other than the patient as the "individual" for purposes of having authority to make healthcare related decisions.  In that regulation, Congress expressly defined "individual" to include persons other than the patient himself.  The court further noted the rule of statutory construction which "creates a presumption that when a statute designates certain persons, things or manners of operation, all omissions should be understood as exclusions."  499 F3d at 1084, *quoting Silvers v. Sony Pictures Entertainment, Inc*., 402 F.3d 881, 885 (9th Cir. 2005).  Because Congress did not include any other persons as "individuals" for the purpose of applying the cost based fee limitation of 45 CFR § 164.524(c)(4), Congress did not intend to include plaintiffs' personal injury attorneys.  *Id*.

 Here, each request at issue was made by Plaintiffs' attorneys.  Plaintiffs' attorneys were not the subject of the protected health information and were thus not "individuals" within the meaning of the HIPAA Regs.  Because Plaintiffs' attorneys are not "individuals" within the meaning of the HIPAA regs, Plaintiffs have failed to state a cause of action based (directly or indirectly) of the breach of the HIPAA regulations.

E.    <u>Plaintiffs Have Failed to State a Claim for Breach of a Fiduciary Duty</u>.

In Count 4 of the Complaint, Plaintiffs attempt to state a cause of action against CIOX for breach of fiduciary duty and/or confidential relationship.  The five short paragraphs which comprise plaintiffs' allegations supporting this claim consist of conclusory allegations of the elements of such a claim.  Plaintiffs allege that CIOX owed plaintiffs a fiduciary duty "in the supervision handling control and production" of medical records (Complaint, ¶ 116) that CIOX's actions and omissions breached its fiduciary duty because CIOX "did not act in good faith and in the best interests of plaintiffs," (Complaint, ¶ 116), that Plaintiffs sustained damages (Complaint, ¶ 117) and that CIOX's actions were "intentional, fraudulent, malicious or reckless" justifying an award of punitive damages.

Although neither the TMRA, HIPAA nor HITECH can be the basis of a contractual or common law duty to support causes of action under contract or negligence, CIOX acknowledges that this rule conceivably might not apply to bar a claim against a person or entity that owed a pre-existing duty to a plaintiff by virtue of a confidential relationship.  As a result, if Plaintiff could establish the existence of a confidential relationship between Plaintiffs and CIOX and a corresponding breach of that duty, Plaintiffs could conceivably state a claim for breach of fiduciary duty.

The complaint, however, is completely devoid of any allegations sufficient to support the existence of a confidential relationship between CIOX and Plaintiffs or their attorneys that could give rise to any cause of action for breach of fiduciary duty.  Accordingly, Plaintiffs complaint fails to state a claim for breach of fiduciary duty.

 Under Tennessee law there are two principal types of fiduciary status.  The first category consists of relationships that are fiduciary *per se*, such as between a guardian and ward, an attorney and client or conservator and incompetent.  *Key v. Lyle*, 2010 Tenn. App.

LEXIS 264, *12 (Tenn. App. April 13, 2010).  The second type is when a relationship is not fiduciary *per se*, but becomes fiduciary where one party has exercised "dominion and control over another."  *Id.*  The relationship is one "where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability because of that confidence to influence and exercise dominion and control over the weaker or dominated party. *Id., quoting Foster Bispark LLC v. Winfrey*, No. M 2006-02340-CLA-R3-CV, 2009 Tenn. App. LEXIS 45 (Tenn. App. January 15, 2009).

In the present case, Plaintiffs have failed to plead *any* facts that would establish a fiduciary relationship between CIOX and individuals whose medical records CIOX copied in exchange for a reasonable fee.  The complaint nowhere alleges that CIOX occupied a position of "domination and control" over Plaintiffs or that CIOX used that position to exert undue influence over Plaintiffs.  In the place of such specific allegations, the Complaint includes a formulaic recitation of the elements of a claim for breach of fiduciary duty, bereft of any specific facts to support the claim.  Such pleading fails to meet the *Twombley/Iqbal* pleading standards and fails to state a claim upon which relief can be granted.

F.      The Complaint Fails to State a Claim Under the Tennessee Consumer Protection Act.

Finally, Plaintiffs may not pursue a class action under the Tennessee Consumer Protection Act.  Tenn. Code. Ann. § 47-18-109 provides that "any person who suffers an ascertainable loss of money or property … may bring an action *individually* to recover actual damages."  The Tennessee Supreme Court has held that this language is unambiguous.  The word "individual" refers to a single person and not to a class or group of people.  Accordingly, "class actions" are prohibited because they are not brought individually.  *Walker v. Sunrise*

*Pontiac-GMC Truck, Inc*., 249 S.W.3d 301 (Tenn. 2008).  Therefore, Plaintiffs' punitive class action claims based upon the TCPA must be dismissed with prejudice.

## IV.   CONCLUSION

For all of these reasons, Plaintiffs' complaint should be dismissed in its entirety.

Respectfully submitted,

*/s/ Garry K. Grooms*
Garry K. Grooms, #12647
BURR & FORMAN, LLP
511 Union Street, Suite 2300
Nashville, TN  37219
615-724-3200 (Telephone)
615-724-3290 (Facsimile)
ggrooms@burr.com
*Counsel for CIOX Health, LLC d/b/a Healthport Technologies, LLC*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June, 2016, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon the parties as indicated below. Parties may also access this filing through the Court's ECF system.

Tim Edwards                            Patrick M. Ardis
Kevin M. McCormack                     Ami A. Dave
Ballin, Ballin & Fishman, P.C.         Wolff Ardis, P.C.
200 Jefferson Ave., Suite 1250         5810 Shelby Oaks Drive
Memphis, TN  37103                     Memphis, TN  38134


                                       */s/ Garry K. Grooms*

24