IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

| | |
|---|---|
| **RICHARD FABER, Individually, and also on behalf of all similarly situated persons, and JENNIFER MONROE, Individually, and also on behalf of all similarly situated persons,** | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 2:16-cv-02337-STA-cgc ) |
| **CIOX HEALTH, LLC, d/b/a HEALTHPORT TECHNOLOGIES, LLC,** | ) ) ) ) |
| Defendant. | ) |

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**
_____

This class action arises from allegations of unreasonable charges and illegal hindrance of access to a patient's medical records under Tennessee law. Before the Court is the Motion (ECF No. 18) of Defendant CIOX Health, LLC, d/b/a Healthport Technologies, LLC, to Dismiss the Amended Complaint (ECF No. 15) of Plaintiffs Richard Faber and Jennifer Monroe, individually and on behalf of a class of similarly situated persons (collectively "Plaintiffs"). Defendant first argues that Plaintiffs lack constitutional standing to bring the causes of action in their Amended Complaint because Plaintiffs do not allege an injury-in-fact. Defendant then attacks Plaintiffs' allegations as insufficient to state a claim under a variety of theories. For reasons set forth below, the instant motion is **GRANTED IN PART AND DENIED IN PART**. Count I in Plaintiffs' Amended Complaint is hereby **DISMISSED**.

**I.     BACKGROUND**

For the purposes of this Motion, the following facts alleged by Plaintiffs are taken as true. Plaintiff Richard Faber is an adult resident of Memphis, Tennessee. Plaintiff Jennifer Monroe is an adult resident of Parsons, Tennessee. Plaintiffs, through agreements with their attorneys of record, authorized said attorneys to act as their personal representatives in all aspects of a personal injury lawsuit. Pursuant to the same agreements, Plaintiffs remain personally liable to their attorneys for expenses incurred as a result of medical records requests such as the ones made to Defendant. Defendant manages the entire process of responding to medical records requests for its hospital clients. This includes receiving the request, locating responsive documents, providing a response to the patient, invoicing the patient, and collecting payment. Defendant advertises itself as providing responses compliant with the Health Insurance Portability and Accountability Act ("HIPAA") to medical records requests from patients and law firms. Defendant also advertises itself as providing a "prompt and complete response" to medical records requests, claiming that it can provide "cost reduction" to individuals requesting medical records due to its use of electronic delivery of medical records, which allows requesters to "view records and only print the ones [they] want to use."

Defendant delivers medical records in paper format or electronically via "HealthPortConnect" and the "IOD Payment Portal." Ordinarily, Defendant requires advance payment in full for the electronic delivery of medical records via HealthPortConnect and the IOD Payment Portal and will not grant access to the requested medical records unless the invoiced amount is paid in full and in advance. HealthPortConnect and the IOD Payment Portal are web-based medical record exchange portals where requesters may create an account, login, and obtain digital copies of the medical records they have requested, which saves the expense of paper

postage, and handling.  Defendant frequently provides medical records in multiple batches rather than a single batch.  For electronic deliveries of medical records, Defendant routinely charges an $18.00 "basic fee," a $2.00 "electronic delivery fee," and "per page copy (paper)" fees even though no paper copies are being provided to the requester.  Defendant routinely charges $20.00 or more for simple, one-sentence correspondence regarding medical records even when no medical records are provided.

In the case of Mr. Faber, Defendant charged him $939.95 in total for two records requests.  Mr. Faber made the first request on or about January 16, 2015.  Mr. Faber received an invoice dated February 28, 2015, for $235.30.  The invoice stated that Mr. Faber was charged $18.00 for the basic fee, $2.00 for electronic delivery, and $215.30 for per-page paper copies.  Mr. Faber, however, did not receive paper copies.  He received them electronically through HealthPortConnect.  On or about December 8, 2015, Defendant provided additional medical records to Mr. Faber, charging a total of $704.65 for another electronic delivery.  The invoice broke down the price again into $18.00 for a basic fee, $2.00 for electronic delivery, and the remaining $684.65 for per-page paper copies.  As before, Mr. Faber did not receive paper copies.

Mrs. Monroe requested medical records pertaining to the treatment of her minor child on at least four occasions but never received said records from Defendant.  Defendant responded to her request and sent an invoice, dated February 11, 2016, for $40.51 but never any medical records.  This invoice broke down the charges into an $18.00 basic fee, a $17.00 total for her per-page paper copy fee (20 pages at $0.85 each), and a $2.08 shipping fee.[1]  Subsequently,

---

[1] The sum of $18.00, $17.00, and $2.08 is $37.08 rather than $40.51.  Fearing that one of the parties may have made a typographical or mathematical error, the Court went beyond the pleadings on this particular occasion and found that the discrepancy appears to result from a "sales tax" that Plaintiffs omitted from their Amended Complaint.  The Court anticipates confirmation or clarification from the parties on this point in the future.

Defendant mailed Mrs. Monroe another invoice dated March 2, 2016—along with fifteen pages of billing records—that called for a total charge of $30.74, listing the $18.00 basic fee, a $1.64 shipping fee, and $8.50 in per-page paper-copy charges.[2]  Despite not providing the requested records, Defendant has attempted and continues to collect payment from Mrs. Monroe's attorneys, threatening handing the matter to a collection agency and legal action.

Plaintiffs allege that Defendants have engaged in a systematic and continuous practice of extracting excessive amounts of money from patients despite lawsuits in at least nine states, including Tennessee where a 2005 state-wide class action resulted in a settlement in 2010.

Plaintiffs filed their initial Complaint (ECF No. No. 1) on May 13, 2016.  Defendant filed its initial Motion to Dismiss (ECF No. 12) on June 24, 2016.  Plaintiffs filed an Amended Complaint (ECF No. 15) on July 14, 2016.  Defendant filed this Motion to Dismiss the Amended Complaint (ECF No. 18) on August 1, 2016.  In a Response (ECF No. 19), Reply (ECF No. 22-1), and Sur-Reply (ECF No. 27), the parties have thoroughly briefed the issues, and the Court finds the instant Motion ripe for decision.

## II.     LEGAL STANDARD

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).  Legal conclusions and unwarranted factual inferences, however, need not be accepted as

---

[2] $18.00, $1.64, and $8.50 total up to $28.14 rather than $30.74.  *See supra* note 1.

true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

#### A.   Lack of Standing

Federal courts may only resolve actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citing U.S. Const., art. III). This is a fundamental principle under our government's separation of powers. Standing, one of several doctrines the courts have

developed in this area, "is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citations omitted); *see also Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178–79 (D.C. Cir. 1983) (Bork, J., concurring) ("All of the doctrines that cluster about Article III . . . relate in part . . . to an idea . . . about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. To establish standing, a plaintiff must satisfy a constitutional minimum of three elements.[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Those elements have been articulated by the Supreme Court as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61 (citations omitted). These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* at 561. As such, a plaintiff bears the burden of

---

[3] These are not the only requirements of standing. "In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). First, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). "Second, a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens." *Coyne*, 183 F.3d at 494 (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982)). And "[t]hird, in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *Id.* (citing *Valley Forge Christian College*, 454 U.S. at 474–75). The distinction between the two sets of requirements is that the legislature may command the courts to ignore the prudential restrictions under a particular cause of action but not the constitutional concerns. Prudential standing, however, is not raised as an issue here.

establishing each element to demonstrate standing by pleading its components with specificity. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). At this stage of the litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561.

Defendant argues that Plaintiffs' allegations are insufficient to create standing. Pointing to a lack of allegations that involve Plaintiffs or their attorneys having actually paid for the medical records, Defendant claims that Plaintiffs have failed to allege an injury adequate to support constitutional standing. Plaintiffs argue that actual payment of the invoices is unnecessary. The parties agree that the decision by the Second Circuit in *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016), is the most prominent analysis of the issue currently before the Court. The facts alleged in *Carter* are largely identical to those of the current case down to, it seems, the defendant. *Carter*, 822 F.3d at 51–53; First Am. Class Action Compl., at 4, July 14, 2016, ECF No. 15 (stating that Defendant is the result of a merger or acquisition between four other medical record providers including HealthPort). The Second Circuit reversed the district court's dismissal of the action for failure to adequately plead an injury-in-fact. *Carter*, 822 F.3d at 51. The district court had based its decision solely on the fact that the plaintiffs had failed to allege that they, rather than their attorneys, had paid the costs for the medical records. *Id.* at 54. The Second Circuit disagreed, reasoning that the facts, as alleged by the plaintiffs, showed that the plaintiffs would be "the ultimate payors." *Id.* at 58. For the Second Circuit, the allegations that the plaintiffs bore "the ultimate expense," even though the

attorneys of the plaintiffs procured the records, proved sufficient. *Id.* Although *Carter* is not binding on this Court, the Court finds the Second Circuit's reasoning persuasive. Defendant reads *Carter* as standing for the proposition that Plaintiffs must have alleged that they or their attorneys actually paid for the records.[4] Thus, the specific issue here is whether mere liability for the medical records is sufficient to convey constitutional standing upon Plaintiffs.

Plaintiffs cite to *Clinton v. City of New York*, 524 U.S. 417 (1998), and *Blum v. Yaretsky*, 457 U.S. 991 (1982), in support of their argument in the affirmative. The Supreme Court's decision in *Clinton* held that the President's use of the line-item veto violated the Presentment Clause of the Constitution. *Clinton*, 524 U.S. at 420–21. The Court found New York City's "contingent liability" constituted an injury-in-fact in the context of the President's use of a line-item veto to remove the waiver of said liability from legislation. *Id.* at 430. Likening the action to a "judgment of an appellate court setting aside a verdict for the defendant and remanding for a new trial of a multibillion dollar damages claim," the Court agreed that New York "suffered an immediate, concrete injury the moment that the President used the Line Item Veto." *Id.* at 430–31. Thus, New York had standing to challenge the line-item veto. *Id.* at 434–36.

In *Blum*, the Supreme Court addressed a question of whether nursing homes could be held subject to the restraints of the Fourteenth Amendment in a challenge by Medicaid patients but first resolved a preliminary issue of standing. *Blum*, 457 U.S. at 993, 999. "[M]indful of 'the primary conception that federal judicial power is to be exercised . . . only at the instance of one

---

[4] Defendant cites to two cases in support of its position—*Spiro v. Healthport Technologies, LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014), and *McCracken v. Verisma Systems, Inc.*, 2015 U.S. Dist. LEXIS 64533 (W.D.N.Y. May 18, 2015). The Court does not specifically analyze them because it believes that *Carter* sufficiently envelopes the propositions that Defendant relies upon them for: a plaintiff cannot create an injury by simply reimbursing the expenses voluntarily or by making a naked conclusion of law that they were legally required to do so.

who is himself immediately harmed, or immediately threatened with harm . . . ,'" the Court noted that "[one] does not have to await the consummation of threatened injury to obtain preventive relief." *Id.* at 1000 (citations omitted). "[The] question [is] whether [the] perceived threat . . . is sufficiently real and immediate to show an existing controversy . . . ." *Id.* (citation omitted). The Court distinguished between challenged transfers by the nursing homes to lower levels of care and higher levels of care in determining that the threat of transfer to lower levels of care constituted a sufficient injury to convey standing. *Id.* at 1000–01. The Court noted first that nothing in the record suggested that any challenger had been transferred or even threatened with such a transfer. *Id.* at 1001. Second, the Court reasoned that a transfer to an increased level of care would result in increased benefits rather than an injury, unlike the transfer to a lower level of care where the challenger could be deprived of benefits. *Id.* at 1001–02.

Here, the invoices show the intent of Defendant to collect the costs of the medical records. Plaintiffs allege that they are contractually obligated to pay the litigation expenses incurred by their attorneys, including the medical records fees at issue in this case. This amounts to an unequivocal allegation that Plaintiffs are the ones ultimately responsible for the costs of these medical records. The allegation of a contract that requires Plaintiffs to pay for these medical records is a sufficiently concrete fact and not "conclusory and elliptical." *See McCracken v. Verisma Systems, Inc.*, 2015 U.S. Dist. LEXIS 64533, at *10–11 (W.D.N.Y. May 18, 2015). Plaintiffs had a liability, if only an alleged one, to Defendant for the amounts provided in the invoices. Though not as severe as in the case of Mrs. Monroe, where Defendant expressly threatened legal action, the invoice has the same effect for the purposes of an injury. A bill for goods or services, however kindly phrased and sent, is a demand. This Court is satisfied

that these allegations set forth a constitutionally sufficient injury. Accordingly, the Court finds that Plaintiffs have standing to bring their causes of action against Defendant.

### B.     Failure to State a Claim

#### 1.     Tennessee Medical Records Act (Count I)

Defendant first challenges Count I of Plaintiffs' Amended Complaint, a claim for relief under the Tennessee Medical Records Act ("TMRA"), Tenn. Code Ann. § 68-11-301 *et seq.* The TMRA requires hospitals to furnish a patient with their medical records "without unreasonable delay" and at "reasonable costs." *Id.* § 68-11-304(a). The TMRA further provides for civil liability for a violation of its provisions in cases of "actual damages . . . for willful or reckless or wanton [violations]" of the statute. *Id.* § 68-11-311(b). But Plaintiff makes no allegation that Defendant, a medical record provider, is a hospital within the terms of the TMRA. Defendant admits that the Tennessee Court of Appeals has previously held that "hospital" includes an independent copying service.[5] *Pratt v. SmartCorp*, 968 S.W.2d 868, 872–73 (Tenn. Ct. App. 1997). The Court of Appeals reasoned that an agent cannot accomplish what its principal is forbidden to accomplish. *Id.* at 873. But this Court is not bound by the Tennessee Court of Appeals. And while the reasoning of the Court of Appeals stands up to the common law of agency, it does not fit with the plain language of the TMRA. In giving effect to a statute, the Court must apply the plain meaning of the statutory language. *United States v. Wiltberger*, 18 U.S. 76, 95 (1820); *Vergos v. Gregg's Enters.*, 159 F.3d 989, 990 (6th Cir. 1998) (citation omitted); *cf. State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017) (citation omitted) ("When the text is clear and unambiguous, we need not look beyond the plain language of the text to

---

[5] Defendant, however, has an incentive to so do. *See infra* Section III.B.2.

ascertain its meaning."). "[A] *hospital shall furnish* to a patient or a patient's authorized representative such part or parts of the patient's hospital records *without unreasonable delay . . . .*" Tenn. Code Ann. § 68-11-304(a) (emphasis added). Under the TMRA, a hospital is "any institution, place, building or agency that has been licensed by the board . . . or any clinic operated under the authority of a local or regional health department . . . ." *Id.* § 68-11-302(4). It does not appear to the Court that Defendant is any such licensed institution or authorized clinic, and Plaintiffs make no allegations as such. The definition of hospital makes this clear on its own terms. The Tennessee General Assembly, however, has also provided further context that "hospital" is not to be construed broadly by differentiating it from "its officers, employees, or . . . personnel." *See* Tenn. Code Ann. § 68-11-311(b). If such individuals are excluded, even without the provided definition of hospital, it is unclear to the Court why an independent entity that manages medical records would be included in its meaning. The Tennessee Court of Appeals further suggested that restricting the term hospital to its explicit definition under the statute would defeat the objective of the legislature. *Pratt*, 968 S.W.2d at 873 (quoting *Cotton v. Med-Cor Health Info. Sols.*, 472 S.E.2d 92, 95 (Ga. Ct. App. 1996)). But the Court "presume[s] . . . 'that [the] legislature says . . . what it means and means . . . what it says.'" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (citation omitted); *Wheeler v. Smith*, 50 U.S. 55, 98 (1850) ("The sovereign will is made known to us by legislative enactment."). And the Court of Appeals ignores the text of the TMRA in furtherance of what it perceives the Tennessee General Assembly's objective to be. *Compare Pratt*, 968 S.W.2d at 872–73, *with* §§ 68-11-302(4), -304(a). This is simply something the Court cannot do. *United States Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 454 (1993) ("A statute's plain meaning must be enforced . . . .); *Container Service Co. v. United States*, 345 F. Supp. 235, 241

11

(S.D. Ohio 1972) (citation omitted) ("We cannot ignore the plain meaning of the statutory language and the clear indications of Congressional intent to achieve a more equitable result."); *see also* Scalia & Garner, *infra* note 6, § 58 (discussing the "false notion that the spirit of a statute should prevail over its letter."). Accordingly, the Court finds that Plaintiffs fail to state a claim under the TMRA because a medical record provider is not a hospital.

### 2. Common Law Claims Generally (Counts II–VII)

Defendant next challenges the common law claims asserted by Plaintiffs in Counts II–VII by pointing to the TMRA's bar on civil actions for its violation except under its terms. *See* Tenn. Code Ann. § 68-11-311(b) ("No hospital, its officers, employees, or medical and nursing personnel practicing in the hospital, shall be civilly liable for violation of this part . . . ."). Having found above that the TMRA does not apply to this action, the Court finds this argument to be without merit.

### 3. Negligence and Negligence Per Se (Counts II and III)

Defendant then argues that Plaintiffs cannot rely on HIPAA or the "Health Information Technology for Economic and Clinical Health Act ("HITECH") to satisfy elements of their common law claims because neither statute creates a private cause of action. The parties are in agreement that HIPAA provides no private cause of action. But they dispute whether these statutes can inform existing causes of action under Tennessee law. Specifically, one question is whether HIPAA or HITECH creates or at least states a duty or duties that the violation of which would support a negligence or negligence *per se* claim. Neither party has presented any controlling authority from the Tennessee Supreme Court or the Sixth Circuit. But the Court

agrees with the reasoning set forth by the U.S. District for the Middle District of Tennessee in *Harmon v. Maury Cty.*, 2005 U.S. Dist. LEXIS 48094 (M.D. Tenn. Aug. 31, 2005) (deciding a motion to remand to state court).  "HIPAA's provisions do not completely preempt state law and expressly preserve state laws that are not inconsistent with its terms." *Id.* at *7–8.  Noting that "state law claims in the state courts are often based upon a federal regulation," the court held that the negligence claim based on a regulation promulgated under HIPAA from the plaintiffs in that case fell within a permissible category.  *Id.* at *10–11.  The Court is therefore not convinced that Plaintiffs are precluded from relying on these federal statutes and the regulations promulgated under them in stating their claims based in Tennessee law.  The Court accordingly finds Defendant's argument on this point to also be without merit.

But Defendant argues in the alternative that Plaintiffs have failed to allege that Defendant actually violated HIPAA because each of the medical records requests at issue came from Plaintiffs' attorneys rather than Plaintiffs themselves.

> A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.

*West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) (citation omitted).  "The doctrine of negligence *per se* is firmly established in [Tennessee] case law. . . . [and requires] three elements [to] be established." *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992).  First, there must be a statute that "imposes a duty or prohibits an act for the benefit of a person or the public."  *Nevill v. Tullahoma*, 756 S.W.2d 226, 232 (Tenn. 1988).  Second, the plaintiff "must be such a person as is within the protection of the law and intended to be benefited thereby."  *Traylor v. Coburn*, 597 S.W.2d 319, 322 (Tenn. Ct. App. 1980) (quoting *Chatanooga Ry. & Light Co. v. Bettis*, 202 S.W. 70, 71 (Tenn. 1917)).  Finally, the plaintiff must demonstrate

13

that the violation was the proximate cause of the injury for which recovery is sought. *Brookins v. Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn. 1981) (citation omitted). In *Nevill*, the Tennessee Supreme Court expressly says "state statute." *Nevill*, 756 S.W.2d at 232. But the general rule is that "as long as [they are] authorized by state law, negligence *per se* suits premised on violation of federal law could go forward." *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 588 (6th Cir. 2013). And Tennessee courts have since acknowledged that "a violation of federal and state regulations can be the basis for a negligence claim under Tennessee law." *Rogers ex rel. Long v. Memphis City Schools*, 1997 Tenn. App. LEXIS 726 (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 34–35 (Tenn. 1988) (agreeing with the appellant's characterization of *Bellamy*).

At the outset, the Court points to the observation of the Tennessee Supreme Court that "all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) (citing *Doe v. Linder*, 845 S.W.2d 173 (Tenn. 1992); Restatement (Second) of Torts § 314 (1964)). And under Count II, Plaintiffs have alleged, independent of the alleged violation of federal law, unreasonable behavior by Defendant that resulted in injury to Plaintiffs. At this stage, these general allegations are sufficient, and the Court finds that Plaintiffs have stated a claim for negligence. But for the purposes of stating a claim of negligence *per se* under Count III, it is necessary to determine both whether Plaintiffs sufficiently allege a violation of a statute and whether Tennessee law permits a negligence *per se* claim premised upon that particular federal statute.

Defendant is correct that it is only the patient who has a right to access his or her protected information under 45 C.F.R. § 164.524(a), which provides that "an individual has a

right of access to inspect and obtain a copy of protected health information about the individual." An individual explicitly means "the person who is the subject of protected health information." 45 C.F.R. § 160.103. The plain language of this regulation excludes everyone but the patient, which would seem to exclude even the patient's attorney. But Plaintiffs correctly point out that an individual may designate a third person to receive the protected health information. *See* 45 C.F.R. § 164.524(c)(3)(ii). And Plaintiffs further note the provision that instructs entities to "treat a personal representative as the individual." *See* 45 C.F.R. § 164.502(g)(1). Personal representative is not a defined term. But understood commonly as meaning "a person chosen or appointed to act or speak"[6] "of, affecting, or belonging to a particular person rather anyone else," this would seem to include not just a spouse, as Plaintiffs argue, but also an attorney. *See* Personal, *New Oxford American Dictionary* (3d ed. 2010); Representative, *New Oxford American Dictionary*. Plaintiffs argue in their memoranda that they complied with the requirements to send the protected health information to their attorneys. But under their general allegations that they or their attorneys made the medical records requests of Defendant, the Court finds that Plaintiffs have sufficiently alleged a violation of the regulations promulgated under HIPAA.[7]

---

[6] The Court omits "for another or others, in particular" because the meaning of "personal" speaks to this point specifically. Representative, *New Oxford American Dictionary*. The particular regulation, 45 C.F.R. § 164.502, was amended in 2002 to include this provision containing "personal representative." Justice Antonin Scalia and Bryan Garner have recommended the *New Oxford American Dictionary* as particularly "useful and authoritative for the English language" since 2001. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* App. A (2012).

[7] Defendant does not appear to contest at this stage of the litigation that its conduct in providing or not providing the records substantively violated the requirements imposed by the HIPAA regulations.

The question is now whether Tennessee law recognizes the duty imposed by the HIPAA regulations. Defendant "readily acknowledges that federal law may sometimes supply a standard of care for duties established by state tort law." Def.'s Reply in Further Supp. of its Motion to Dismiss Am. Compl., at 9, Oct. 3, 2016, ECF No. 22-1. But Defendant claims that there can be no new cause of action for "charging 'unreasonable' amounts for copying medical records." *Id.* at 11. Plaintiff does not ask this Court to create a new cause of action but to let federal law inform the duty of care for its negligence claim and provide the statutory duty that is the basis for a negligence *per se* claim. As Defendant points to no authority suggesting that HIPAA regulations cannot be used in such a manner, the Court is not prepared to dismiss Plaintiffs' claims at this stage of the litigation. Accordingly, the Court finds that Plaintiffs have stated a claim under Count III for negligence *per se*.

### 4. Breach of Fiduciary Duty or Confidential Relationship (Count IV)

Defendant next seeks dismissal of Count IV of Plaintiffs' Amended Complaint, a claim for breach of fiduciary duty or confidential relationship. Defendant argues that Plaintiffs have not made any allegations sufficient to support the existence of a confidential or fiduciary relationship between Defendant and Plaintiffs. Defendant is correct that a fiduciary relationship under Tennessee law can only arise, absent a statutory imposition, in one of two ways: (1) a fiduciary *per se* relationship, such as a client-attorney relationship or guardian-ward relationship; or (2) a confidential relationship, where confidence is imposed upon a dominant party that exercises influence and control over the weaker party. *See Condo. Mgmt. Assocs. v. Fairway Vill. Owner's Ass'n*, 2010 Tenn. App. LEXIS 105, at *19–21 (Tenn. Ct. App. Feb. 8, 2010) (citations omitted). Plaintiffs allege that Defendant owed Plaintiffs a fiduciary duty in its

supervision, handling, control, and production of Plaintiffs' medical records, that Defendant breached its fiduciary duty to Plaintiffs by failing to properly provide the requested medical records, and that Plaintiffs suffered injuries as a direct result of this breach.  The allegations of an exercise of sole control over Plaintiffs' medical records such that Defendant could charge unreasonable prices or prevent Plaintiffs from accessing their medical records appears sufficient to the Court as stating the existence of a confidential relationship under Tennessee law. Defendant presents no authority beyond its general description of a fiduciary relationship, much less any authority demonstrating Plaintiff's specific allegations as insufficient.  Thus, the Court finds that dismissing Plaintiff's claim at this state of the litigation is inappropriate.

### 5. Tennessee Consumer Protection Act (Count IX)

Defendant challenges Plaintiffs' claims under the Tennessee Consumer Protection Act (the "TCPA"), arguing that the TCPA permits individual claims only.  Defendant is correct; the Tennessee Supreme Court has expressly held that the TCPA does not allow class actions under its provisions.  *See Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310 (Tenn. 2008) ("Class actions are still prohibited because they are not actions brought 'individually.'"). Plaintiffs counter that the TCPA claims are being brought individually and not as a class, which seems to be the case as stated in paragraph 99 of the Amended Complaint.  Defendant offered no additional argument in its Reply.  Accordingly, the Court holds that Mr. Faber and Mrs. Monroe have stated a claim under the TCPA.

### 6. Remaining Claims (Counts V–VIII)

As Defendant makes no argument against Counts V through VIII beyond its general argument that civil actions for violations of the TMRA are barred by the TMRA outside of its provided exception, and the Court has already found that the TMRA is inapplicable to this action, the Court finds that Defendant's challenges to these claims are without merit. Accordingly, Plaintiffs' claims for breach of implied contract, breach of covenant of good faith and fair dealing, and unjust enrichment, as well as their request for injunctive relief survive Defendant's Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have stated a claim under Counts II–VIII, and Mr. Faber and Mrs. Monroe have stated a claim under Count IX, but Plaintiffs have failed to state a claim under Count I. Accordingly, Defendant's Motion to Dismiss the Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. Count I of Plaintiffs' Amended Complaint is hereby **DISMISSED**.

**It is so ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 29, 2017.