## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **RICHARD FABER and**<br>**JENNIFER MONROE, Individually,**<br>**and also on behalf of similarly situated**<br>**persons,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION NO: 2:16-cv-02337** |
| **vs.** | ) ) | |
| **CIOX Health, LLC, d/b/a HealthPort**<br>**Technologies, LLC,** | ) ) ) | |
| **Defendant.** | ) | |

## MOTION OF DEFENDANT CIOX HEALTH, LLC
## TO ALTER OR AMEND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND
## INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, Defendant CIOX Health, LLC, d/b/a HealthPort Technologies, LLC ("CIOX") respectfully moves the Court to alter or amend its order granting in part and denying in part CIOX's motion to dismiss (Dkt. 40, hereinafter, "Dismissal Order").  In support of its motion, CIOX would show to the Court as follows:

### I.       Introduction

On September 29, 2017, this Court entered the Dismissal Order, granting in part and denying in part CIOX's Motion to Dismiss the First Amended Class Action Complaint ("Amended Complaint") filed on July 14, 2016.  (Dkt. 15).  In short, the Dismissal Order granted CIOX's motion to dismiss Count I of the Amended Complaint, which alleged violations of the Tennessee Medical Records Act T.C.A. §68-11-301, et. seq., but denied the motion in all other respects.  While CIOX acknowledges the general reluctance of courts to revisit issues that have

been fully briefed and argued, CIOX submits that two discrete statements by the Court in its Dismissal Order directly conflict with HIPAA and regulations promulgated thereunder. The Court erred in disregarding them. Because these issues are crucially significant to both liability and class certification issues in this action, CIOX requests that the Court revisit those issues at this early stage.

For the reasons that follow, the Dismissal Order should be amended to dismiss any claims stemming from medical records requests from anyone other than an "individual" or the individual's "personal representative" as defined by 45 C.F.R. §160.103.

## II.     Issues on Which Amendment is Sought

### A.     The Court Erred in Stating that HIPAA Does Not Define the Term "Personal Representative."

CIOX first requests that the court reconsider and amend its order to the extent the court held that HIPAA and its regulations do not define the term "Personal Representative." In its motion papers, CIOX noted that by their express and unambiguous terms, HIPAA regulations apply only to "individual(s)" (45 C.F.R. §164.524(a)(1)), which the Regulations define as "the person who is the subject of the protected health information." 45 C.F.R. §160.103. CIOX noted, however, that HIPAA does require that a provider treat the "personal representative" of an "individual" as the individual for purposes of responding to a request for medical records. 45 C.F.R. §164.502(g)(1). Plaintiffs did not assert in their motion papers that Plaintiffs' attorneys qualified as their "personal representatives" within the meaning of HIPAA.[1]

Nevertheless, in its Dismissal Order, the court seemed to conclude that Plaintiffs' attorneys who submitted the medical requests at issue *might be* "personal representatives" of

---

[1] In their response, Plaintiffs did note that Mr. Faber's wife signed one of the HIPAA authorizations at issue, and asserted that she was Mr. Faber's personal representative (Plaintiffs' Response (Dkt. 19) at 15). Plaintiffs did not make this same claim as to Mr. Faber's attorneys.

Plaintiffs whom CIOX was required to treat as the "individual" under HIPAA. Stating that "'Personal Representative' is not a defined term" under HIPAA (Dismissal Order at 15), the Court turned to other sources to define the term, including the definition of the term "personal representative" from New Oxford American Dictionary. Based upon the dictionary definition of the term, the Court concluded that Plaintiffs' attorneys might qualify as "personal representatives" within the meaning of the regulations. Dismissal Order at 15. Accordingly, the court held that "under the general allegations that they or their attorneys made the medical records requests of Defendant, the Court finds that Plaintiffs have sufficiently alleged a violation of the regulations promulgated under HIPAA." Dismissal Order at 15.

Respectfully, to the extent that the Court held that HIPAA does not define the term "personal representative," the court erred. 45 C.F.R.§164.502(g)(2) provides as follows:

> If under applicable law a person has authority to act on behalf of an individual who is an adult or an emancipated minor in making decisions related to health care, a covered entity must treat such person as a personal representative under this subchapter, with respect to protected health information relevant to such personal representation.

In short, HIPAA defines a personal representative as someone who, under applicable law, has the authority to act on behalf of an individual who is in an adult or emancipated minor in making decisions related to health care. Unless Plaintiffs' lawyers have the ability to act on Plaintiffs' behalf in making decisions relating to health care, Plaintiffs' lawyers are not "personal representatives" within the meaning on HIPAA. *Accord Webb v. Smart Document Solutions, LLC*, 499 F. 3d 1078 (9th Cir. 2007).

As a result, allegations that CIOX did not apply the HIPAA access fee limitations in response to requests from Plaintiffs' attorneys fail to state any violations of HIPAA. CIOX respectfully requests that the Dismissal Order be revised accordingly.

**B.     HIPAA Recognizes a Bright Line Distinction Between a HIPAA Authorization Form and an Individual Right of Access Request.**

The second amendment CIOX seeks to the Dismissal Order is similar to the first. In their briefs opposing CIOX's motion, Plaintiffs repeatedly attempted to conflate two distinct types of medical records requests:  a direct request for information from an individual (which HIPAA regulations often refer to as an "individual right of access request"), and a request from a lawyer or other third party accompanied by a HIPAA authorization signed by the individual.

Plaintiffs' efforts to conflate the two were apparently successful.  Having first concluded that Plaintiffs' personal injury attorneys might quality as "personal representatives", the court was receptive to Plaintiffs' argument that a letters from Plaintiffs' attorneys attaching HIPAA authorizations triggered the HIPAA access fee limitations.  After reciting the parties' respective positions on the issue, the Court stated:

> But plaintiffs correctly pointed out that an individual may designate a third person to receive the protected information…plaintiffs' argue in their memorandum that they complied with the requirements to send the protected health information to their attorneys.  But under the general allegations that they or their attorneys made the medical records request of defendant, the Court finds that plaintiffs have sufficiently alleged a violation of the regulations promulgated under HIPAA.

Dismissal Order at 15.

To the extent the court held that violations of HIPAA access fee limitations can be premised on CIOX's responses to letters from Plaintiffs' attorneys accompanied by a HIPAA authorization, the court erred.  In its brief in support of its motion to dismiss Plaintiffs' original complaint (Dkt. 12-1), CIOX cited to the Court the applicable HIPAA statutes and regulations as well as the decision of the United States Court of Appeals for the Ninth Circuit in *Webb v. Smart Document Solutions, LLC*, 499 F. 3d 1078 (9th Cir. 2007).  *Webb* is the only decision that has addressed the central issue presented here, which the court in *Webb* framed as follows:

> The question raised by this case is whether designated agents, such as personal attorneys, can count as the "individual" in order to obtain the reasonable, cost based [HIPAA] fee.

499 F. 3d at 1084.

After reviewing the language of the statute and its regulations, the Ninth Circuit in *Webb* noted that the right of access to medical records is granted to "individuals," which the regulations define as "the person who is the subject of the protected health information." 499 F. 3d at 1084, citing 45 C.F.R. §160.103.  As a result of this plain language the Court concluded:  "on their face then, the regulations restrict the fee limitations to requests made by the *individual* and concretely define "individual" in a way that excludes others acting on that individual's behalf."  *Id.*

But the Court in *Webb* did not stop with the plain meaning of the statute.  Instead, it went on to explore its legislative history to see if the history revealed a "clearly expressed administrative intent" that would be contrary to the plain meaning of the regulation.  *Id.*  The Court concluded that not only did the relevant regulatory history fail to reveal such a contrary intent, but rather revealed a clear intent consistent with the plain language of the statute and the regulations. As the court stated, "on the contrary, a review of relevant regulatory history makes clear that DHHS did *not* intent for private attorneys to receive the reduced fees."  499 F. 3d at 1084.   The Court specifically noted that "DHHS initially considered adopting a broader definition of "individual" that would have included legal representations, but in the final rule ultimately decided against it."  *Id., citing* 65 Fed. Reg. 82492.

In holding that the term "individual" excluded attorneys for the individual/patient, the Court further noted that 45 C.F.R. §164.502(g) defined when a covered entity must treat someone other than the patient as the "individual."  *Id.*  As noted above, that statute directs that a provider must also treat an individual's "personal representative" as the "individual" with respect

to requests for PHI.   Because Plaintiffs' attorneys in *Webb* were not Plaintiff's personal representatives, the court concluded, requests from them were not subject to the access fee limitations.  499 F.3d at 1085.

In their motion papers, Plaintiffs erroneously claimed that *Webb* was superseded by statute and regulation - specifically, the enactment of the HITECH Act in 2009 and new regulations under HIPAA and HITECH issued in 2013 (the "Omnibus Rule") after *Webb* was decided.  Plaintiffs Response (Dkt. 19 at 15).   "These regulations," plaintiffs argued, allow a patient to request that the medical records provider send the records to a designated individual and as a result to receive the benefit of the cost-based fees.  *Id.*, citing 42 U.S.C. §17935(e) and 78 F.R. 5634-35. Plaintiffs then argued at length that they complied with these provisions when they directed that medical records be sent to their attorneys. *Id.* Plaintiffs advanced a similar argument in a sur-reply filed on October 10, 2016.  (Dkt. 24-2). In it, Plaintiffs cited to guidance issued by the Department of Health and Human Services ("Department") in 2016 ("Guidance") that reaffirmed the right of individuals to direct that their medical records be sent to a third party and further "direct[ed] the provider to treat individual requests forwarded by third parties as though made by the patient directly." Sur-Reply at 2.

In sum, Plaintiffs advanced the following three (3) propositions to the Court:  first, that the enactment of HITECH in 2009 for the first time gave "individuals" the right to direct that their medical records be sent to a third party; second, that this "change" in the law rendered all letters from attorneys accompanied by a HIPAA authorization form requests from "individuals" subject to the HIPAA access file limitations; and third, that any ambiguity on this issue was clarified by the Guidance issued by the Department in 2016.

Respectfully, each of the three propositions is demonstrably false.  First, the option of an individual to direct that his or her PHI be sent to a third party was not created by HITECH or the 2013 Omnibus Rule.  Rather, it has always been available.  Indeed, the court in *Webb* expressly recognized that attorneys might circumvent the distinction and force application of the HIPAA access fee limitations by "ghost-writing" letters for Plaintiffs to sign and sending them to covered entities. After holding that requests for medical records from attorneys were not subject to the access fee limitations, the Court stated:

> Our holding, however, in no way precludes attorneys from assisting their clients in accessing and obtaining their medical records without triggering the hefty fees…

> We only:

>> uphold the ability of copying services to charge higher rates when the attorney makes the request on behalf of his or her client then when the patient/client makes the request directly…[We do] not address such presumably common scenarios in which the client signs the request and asks the documents to be sent to the attorney, or the attorney prepares the documents on his or her letterhead and the client personally signs the request.

499 F. 3d at 1089, quoting *Bugarain v. ChartOne*, 38 Cal. Rptr. 505, 511 (Cal. Ct. App. 2006).

Second, the 2013 Omnibus Rule simply did not - as Plaintiffs argued - eliminate the distinction between individual access requests (requests from "individuals" directing that the records be produced to a third party) and attorney requests accompanied by HIPAA authorizations. To the contrary, the 2013 Omnibus Rule reaffirmed the distinction, plainly stating that "*a written request for [medical records] to be sent to a designated person is distinct from an authorization form*."  Fed. Reg. 5566, 5635 (January 25, 2013).

Finally, although Plaintiffs are correct that the 2016 Guidance from the Department eliminated any ambiguity on this point, Plaintiffs' argument that the Department eliminated the

distinction between an individual "right of access request" and an attorney letter with a HIPAA authorization is incorrect.  To the contrary, the Guidance expressly addressed the issue presently before the court and reaffirmed the long-recognized distinction.

To drive the distinction home, the Department even included a table highlighting the differences between the two types of requests.  This portion of the Guidance in the form of "frequently asked questions" and the Department's response -- *not* cited by Plaintiffs -- is reproduced below.

> **Why depend on the individual's right of access to facilitate the disclosure of PHI to a third party - why not just have the individual execute a HIPAA authorization to an able covered entity to make this disclosure?**

The answer provided was as follows:

> The PHI that an individual wants to have disclosed to a third party under the HIPAA right of access also could be disclosed by a covered entity pursuant to a valid HIPAA authorization.  However, there are differences between the two methods – the primary difference being that one is a required disclosure and one is a permitted disclosure -- that may make the right of access a more favorable choice for most disclosures the individual is initiating on her own behalf.  These differences are illustrated in the following table:

| HIPAA Authorization | Right of Access |
|---|---|
| **Permits, but does not require, a covered entity to disclose PHI** | **Requires** a covered entity to disclose PHI, except where an exception applies |
| Requires a number of elements and statements, which include a description of who is authorized to make the disclosure and receive the PHI, a specific and meaningful description of the PHI, a description of the purpose of the disclosure, an expiration date or event, signature of the individual authorizing the use or disclosure of her own PHI and the date, information concerning the individual's right to revoke the | Must be in writing, signed by the individual, and clearly identify the designated person and where to the send the PHI |

| HIPAA Authorization | Right of Access |
|---|---|
| authorization, and information about the ability or inability to condition treatment, payment, enrollment or eligibility for benefits on the authorization. | |
| No timeliness requirement for disclosing the PHI Reasonable safeguards apply (e.g., PHI must be sent securely) | Covered entity must act on request no later than 30 days after the request is received |
| Reasonable safeguards apply (e.g., PHI must be sent securely) | Reasonable safeguards apply, including a requirement to send securely; however, individual can request transmission by unsecure medium |
| **No limitations on fees that may be charged to the person requesting the PHI; however, if the disclosure constitutes a sale of PHI, the authorization must disclose the fact of remuneration** | Fees limited as provided in 45 CFR 164.524(c)(4) |

In addition, the Privacy Rule permits covered entities to disclose PHI for treatment, payment and health care operations without the need to first obtain an individual's authorization or receive an access request by the individual to have the individual's PHI directed to a third party for such purposes. See 45 CFR 164.506. As a result, if an individual is seeking to have her PHI shared among her treating providers, the covered entities can and should do so; the individual should not have to facilitate this transmission by submitting an access request (and potentially having to wait up to 30 days for the information to be sent and be charged a fee) or by executing a HIPAA authorization. See the Fact Sheets on Understanding Some of HIPAA's Permitted Uses and Disclosures at http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/permitted-uses/index.html.

In their motion papers, Plaintiffs hopelessly conflated an individual right of access request directing that PHI be delivered to a third party (such as an attorney) with an attorney

request accompanied by a HIPAA authorization signed by the individual. It is undeniably true (as the Guidance makes clear and CIOX has never disputed) that the former is subject to the HIPAA fee limitations.  It is also undeniably true (as the Guidance makes it clear and *Plaintiffs* cannot dispute) that the latter is not.

This conflation of the two distinct types of requests caused this court to err.  In the Dismissal Order, the Court stated that "under the general allegations that they *or their attorneys* made the medical records request of defendant" the Amended Compliant stated a claim for violations of HIPAA.  Dismissal Order at 15.  The error is that HIPAA violations cannot be premised on CIOX's responses to letters from attorneys with attached HIPAA authorizations because such requests are not subject to the HIPAA access fee limitations.  HIPAA and its regulations have always (and still do) draw a clear, bright-line distinction between (1) an individual's "request" for medical records under 45 C.F.R. §164.502(a)(2)(i) and §164.554 or §164.528; and (2) a third party request accompanied by an "authorization" under 45 C.F.R. §164.508 for the release of medical records. The former is subject to the access fee limitations; the latter is not, as a matter of law.  CIOX respectfully requests that the Court reconsider and amend the Dismissal Order accordingly.

### III.    Conclusion

Each of these related issues are of crucial importance both to liability and class certification issues in this action. As to liability, the relevance is clear: if the HIPAA fee limitations do not apply to medical records requests from Plaintiffs' personal injury attorneys accompanied by a HIPAA authorization, then Plaintiffs can have no claims premised upon such requests.  Such claims can be premised only upon alleged HIPAA violations stemming from

requests from the individuals or their "personal representatives" as that term is defined by HIPAA.

As to class certification, the Amended Complaint defines the putative class as "Plaintiffs and all similarly situated individuals and entities who requested copies of medical records from Defendant…."  Amended Complaint, ¶99. The proffered definition of the putative class makes no distinction between direct access requests from individuals or their personal representatives on one hand and requests from third parties accompanied by a HIPAA authorization on the other. Because the HIPAA access fee limitations apply only to the former and not the latter, failing to distinguish between the two will result in clear error at any subsequent class certification proceedings.  For these reasons, CIOX respectfully requests that the court reconsider its holdings on these two crucial points as a threshold matter.  The court should amend its and enter an order dismissing any and all of Plaintiff's claims stemming from medical records requests from anyone other than an "individual" or the individual's "personal representative" as defined by 45 C.F.R. §160.103.

This the 27th day of October, 2017.

Respectfully submitted,

*/s/ Garry K. Grooms*
Garry K. Grooms, #12647
BURR & FORMAN, LLP
511 Union Street, Suite 2300
Nashville, Tennessee 37219
615-724-3200 (Telephone)
615-724-3290 (Facsimile)
ggrooms@burr.com
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of October, 2017, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon the parties as indicated below. Parties may also access this filing through the Court's ECF system.

| | |
|---|---|
| Tim Edwards | Ami A. Dave |
| Kevin M. McCormack | Post Office Box 38187 |
| Ballin, Ballin & Fishman, P.C. | Memphis, TN  38187 |
| 200 Jefferson Ave., Suite 1250 | |
| Memphis, TN  37103 | |

*/s/ Garry K. Grooms*